**STATE of Missouri, Respondent,**

v.

**Charles A. ELAMIN, Appellant.**

**No. WD 40864.**

Missouri Court of Appeals, Western District.

Feb. 28, 1989.

As Modified May 2, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied June 13, 1989.

---

Sean D. O'Brien, Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and SHANGLER and BERREY, JJ.

FENNER, Presiding Judge.

Appellant appeals his conviction of fraudulent use of a credit device, Section 570.-130, RSMo 1986. Appellant argues that his arrest was without probable cause that an offense had been committed and that the trial court erred in overruling his Motions to Suppress.[1]

Detective Dennis Gayotto, with the Kansas City, Missouri Police Department testified in relation to appellant's Motions to Suppress. Detective Gayotto stated that on March 9, 1987, he responded to a call from Montgomery Ward at the Ward Parkway Shopping Center. Upon arriving at the shopping center, Detective Gayotto met with Michael Hogue who was a security officer for Montgomery Ward.

Mr. Hogue advised Detective Gayotto that he had observed an individual, whom he described to the Detective and who was later determined to be appellant, leave the store with two videotape machines. Upon checking with the electronics department, Hogue was advised that the machines had been paid for with a credit card. Hogue contacted the Montgomery Ward credit office and learned that the holder of the card in question was a man named Harpin who was 72 years old while the appellant was noted by Hogue to be at least 30 years younger. Hogue was suspicious and since he believed Harpin to be an unusual name, he called a person by the name of Harpin that he found listed in the phone book. A woman answered Hogue's call and said that she believed the holder of the card in question was her father-in-law who was bedridden and could not leave his residence and that he would not be purchasing these items. Hogue told Detective Gayotto that he then called the residence of the card holder, Jack Harpin, and was informed by a woman answering the phone that Harpin was in bed resting and could not come to the phone. Hogue talked to the daughter-in-law again and she told Hogue that after her initial conversation with him she talked to her father-in-law and was advised that he had not given anyone permission to use his credit cards.

While Detective Gayotto was at the Montgomery Ward store working on his report, appellant came to the loading dock and attempted to return at least one of the

---

1. Appellant filed a Motion to Suppress the evidence seized from his person and a Motion to Suppress the statements he made after his arrest. The Motions were taken together by the trial court.

items he had purchased. Detective Gayotto went to the loading dock and confronted appellant identifying himself as a police officer. Detective Gayotto asked appellant for some identification and appellant said he didn't have any identification. Appellant said his name was Larry but refused to give his last name. At this point Detective Gayotto advised appellant of his Miranda rights, and placed him under arrest.

After placing appellant under arrest, Detective Gayotto while checking him for a weapon discovered a small rectangular box. Gayotto checked the box for razor blades or other objects and found identification in the name of Charles Elamin as well as a Boatmen's Bank credit card and a Montgomery Ward credit card in the name of Jack Harpin.

Detective Gayotto asked appellant where his car was and appellant indicated it was right next to the loading dock. Gayotto asked appellant if any property he had purchased from Montgomery Ward was in the car or if appellant knew of its whereabouts. Appellant said none of the property was in the car and he didn't know of it's whereabouts. Appellant told Detective Gayotto he had permission from Mr. Harpin to purchase the merchandise and that his mother was having an affair with Mr. Harpin. Gayotto testified that he could see a box that he knew to be Montgomery Ward merchandise in plain view in the back seat of appellant's car.

At the police station after signing a Miranda waiver form, appellant admitted he had done some work for Mr. Harpin at Harpin's home and appellant said he had asked Mr. Harpin if he could borrow some money. Appellant said Harpin would not lend him the money but gave him permission to use his credit cards provided appellant paid for the items he purchased.

It is well established under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that police may make a brief investigatory stop of a person when they have a "reasonable suspicion that criminal activity may be afoot." *See also, State v. Adell*, 716 S.W.2d 469, 471 (Mo.App.1986). Where such suspicion is present, the police may "stop the suspected person, identify themselves as police officers, require the suspect to identify himself, and make reasonable inquiries concerning his activities." *Id.*

In order to establish probable cause for an arrest the officer must possess "knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed an offense." *State v. Heitman*, 589 S.W.2d 249, 253 (Mo. banc 1979), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980). Although probable cause requires more than a mere suspicion, "its existence must be determined by practical considerations of every day life on which reasonable persons act and not the hindsight of legal technicians." *Id.* Hearsay may be considered in determining whether probable cause exists if it has some inherent credibility upon which a reasonably prudent person would act. *State v. Stokes*, 710 S.W.2d 424, 426 (Mo.App. 1986). Furthermore, the information in possession of the arresting officer need not be that quantum of proof necessary to sustain a conviction. *State v. Smith*, 681 S.W.2d 518, 521 (Mo.App.1984).

Considering the fact that appellant refused to identify himself when initially approached by Detective Gayotto, together with all of the other information possessed by the detective at the time he placed appellant under arrest, probable cause was established for appellant's arrest and the trial court did not err in overruling appellant's Motions to Suppress.

The judgment of the trial court is affirmed.

All concur.